WILBUR J. ADAMS et al.

*v.*

LAMBERTVILLE HEAT, LIGHT AND POWER COMPANY.

[Submitted November 10th, 1914. Decided November 14th, 1914.]

1. Evidence, on objection to confirmation of a receiver's sale, and on petition for resale—*Held* to show that a sale of an insolvent corporations' plant, free of a mortgage of $80,000 and from several executions, for $30,500, was for a price far below its actual market value.

2. Where a receiver of an insolvent corporation, ordered to sell its plant, sold it, free from a mortgage of $80,000, for $30,500, a price far below its actual market value, a bondholders' committee, which before the sale had worked diligently to bring into a protective scheme all the bondholders, who were numerous and widely scattered, the addresses of a part of whom the receiver would not disclose until too late, and which at the sale, representing more than one-half of the bondholders, offered to bid $5,000 for the property subject to the mortgage, which offer would have enabled the receiver to pay all the corporation's debts and have saved the bondholders from a sacrifice of seventy-five per cent. of their interest, such committee was entitled, as a matter of right, to an adjournment of the sale, and the sale made would not be confirmed.

3. Where a sale is made for a fair price and in good faith, and there is no irregularity, fraud, mistake, or legal surprise, with which the purchaser is or ought to be chargeable, the subsequent offer of a higher price by another bidder is not of itself sufficient reason for refusing confirmation.

4. Where a purchaser at a receiver's sale, free from mortgage and judgment liens, of the plant of an insolvent corporation at a price below its actual market value was fully informed of efforts by the bondholders' committee to have the sale ordered to be made subject to the mortgage, and of a higher bid by the committee in case of sale subject to the mortgage, made during the sale, would be assumed to have made his bid with notice of the bondholders' equities, and subject thereto.

On objection to confirmation of sale and petition for resale.

*Mr. Scott Scammell* and *Mr. W. Holt Apgar,* for the objectors.

*Mr. William J. Kraft,* for the purchaser.

*Mr. Edgar W. Hunt,* for the receiver.

*Mr. Linton Satterthwaite,* for the mortgagee-trustee.

BACKES, V. C.

The receiver of the defendant, an insolvent corporation, sold its plant free of a mortgage of $80,000 and of several judgments against the company upon which executions were issued and levied. The order to thus sell was made, chiefly because of a conflict between the mortgage and judgment holders as to the extent and priority of their respective liens; pending the litigation of which the property of the company was likely to deteriorate in

value. The mortgage referred to was executed to a trustee, to secure an issue of $80,000 of bonds, and shortly after the appointment of the receiver in June last, a committee of the bondholders was formed to protect their interest, which committee has filed objections to the sale and a petition that the property be resold subject to the mortgage. The property was struck off and sold for $30,500. The affidavits of the objectors satisfy me that this price is less than one-half of its value. It was appraised by experts of the Public Utility Commission, about two years ago, at $76,000. The physical property, exclusive of the real estate upon which the power station of the company is located, and of the franchises of the company in the city of Lambertville and in the town of New Hope, in Pennsylvania, was appraised by an expert of the purchaser at $24,185. What ' the value of the real estate is he does not say, nor did he place an estimate upon the franchises. In none of the affidavits before me is it attempted to appraise the franchise, but it is a matter of common knowledge that public grants of this kind are usually the principal asset of public utility corporations, the value of which is measurable only by the company's earning capacity. This company was fairly prosperous until about two years ago, and even up to the time of the decree of insolvency it had earned sufficient to pay the interest on its bonds. That it became insolvent within so short a period, is charged to mismanagement and unlawful diversion of its funds. However this may be, I think it is a fair deduction, based upon the estimate of the physical property as given by the purchaser's expert, plus the land and the company's two franchises, that the value of the plant approximates nearly the amount of the bonded indebtedness; showing pretty clearly that it was struck off at a price far below its actual market worth. Support of this view is to be found in the offer of the bondholders' committee to the receiver at the time of the sale, to bid not less than $5,000 in excess of the mortgage encumbrances, if the property were exposed to sale, subject to the mortgage; in effect, a bid of $85,000, of which I will now speak.

The bondholders' committee, at the time of the sale, represented more than a majority of the outstanding bonds. The

bondholders were numerous and widely scattered throughout the states. Some held bonds of only the par value of $100.

The committee worked diligently to bring them all into the protective scheme. The holders of $27,000 of these bonds were unknown to the committee, and the receiver declined to divulge their names and addresses until advised to do so by the court, but too late to be available to the committee before the sale. But, representing more than one-half of the bondholders, and to obtain further time in which to secure the co-operation of the balance and thus to enable the committee to apply to the court to allow the mortgage to remain undisturbed, the committee, on the day of sale, requested and were denied an adjournment, and, during the progress of the sale, offered to bid not less than $5,-000 for the property, if it were then put up subject to the mortgage. This the receiver also denied. In the objections to confirmation, and petition for resale, the committee renew the offer to bid at least $5,000; and further, that they will pay the expenses of readvertisement and will provide for the payment of interest on the bonds which matured October 1st, 1914, and further agrees to place the property in such repair that the interest of the public being served by the company will not suffer. A certified check of $5,000 is tendered as a guarantee. If this offer is accepted, it will result in enabling the receiver to pay all of the company's debts, including the expenses of the receiver's administration. These circumstances present a situation not merely of a subsequent offer by another of a higher price, for if that were the case the general settled rule would be applicable "that where the sale is made for a fair price and in good faith, and there is no irregularity, fraud, mistake or legal surprise with which the purchaser is or ought to be chargeable, the subsequent offer by another bidder of a higher price, is not of itself sufficient reason for refusing confirmation." *Morrissee* v. *Inglis, 46 N. J. Eq. 306; Rogers* v. *Rogers Locomotive Co., 62 N. J. Eq. 111; Hoffman* v. *Godfrey, 79 N. J. Eq. 617.* Here the bondholders were diligent in their efforts to protect their property interests before the sale, and made, what is now the increased offer, at the time of the sale, and were frustrated only by the receiver's zeal to strictly comply with the mandate of the selling order.

Had the facts which were presented to the receiver been laid before the court—and it appears that the committee's counsel tried, but was unable to reach the vice-chancellor who granted the selling order—the relief sought would have been granted. The exigency should have appealed to the receiver. The property was in his hands as trustee primarily for the common creditors, in whose interests the insolvency proceedings were instituted. To confirm the sale will result in a total loss to them, and a sacrifice of nearly seventy-five per cent. of the interest of the bondholders; whereas, had the receiver granted the committee's request for an adjournment of the sale, to enable the bondholders to have excised from the selling order the foreclosure of their mortgage, all would have been saved. And, indeed, I am of the opinion that under the circumstances the bondholders were entitled to an adjournment as a matter of right. Although, as to them, the order to sell free of the lien of their mortgage was *in invitum,* they, to all intents and purposes, at the time of sale, occupied the position of mortgagees in foreclosure, and as such would have been, and as constructive selling mortgagees were, entitled to have the sale postponed on request. Measured by the fruits of a sale, as then and now desired by the bondholders, the property of the receiver *cestuis que trust* was sacrificed by the bid he accepted, and confirmation, which would work such great hardship and injustice, will be withheld. *Rowan* v. *Congdon, 53 N. J. Eq. 385; Porch* v. *Agnew Company, 66 N. J. Eq. 232; Strong* v. *Smith, 68 N. J. Eq. 650.*

The purchaser was fully apprised at the sale of the offer made to the receiver by the bondholders. The auction was halted when the purchase price was offered, and it was then that the offer to bid not less than $5,000 for the property, subject to the mortgage, was made, and it must be assumed that the purchaser made his bid with notice of the inequities, and also subject to the equities of the bondholders, as they have now been laid before the court.

The order to sell will be amended, ordering a sale of the property subject to the mortgage lien, upon condition: that the bondholders' committee stipulate, in writing, with the chancellor, that upon a resale they will bid at least the sum of $5,000, and

as much more as will, together with the funds in the hands of the receiver, pay the costs of administration, and all of the debts secured and unsecured of the company (exclusive of the bonded indebtedness), and also the interest on the bonds which matured October 1st, 1914; that they deposit with the receiver a certified check for $5,000, as a guarantee; and that upon such sale the mortgage encumbrance, as between the receiver and the purchaser, but not as between the receiver and the bondholders, be regarded as a fixed lien upon the property so to be sold, which shall also be incorporated in the conditions of sale. This requirement is because the legality of some of the bond issue is assailed, and if the assault is successful, it is to enure to the receiver for the benefit of the stockholders. To be more explicit: The property is to be sold for $80,000 (the mortgage lien to form so much of the consideration), plus the sums above mentioned. If these conditions are not complied with within twenty days, or such further time as the court may, upon application, grant, the sale will be confirmed.